UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

BRIAN WOODCOCK, *et al.*,            )
                                     )
        Plaintiffs,                  )        Civil No. 3:16-cv-00096-GFVT
                                     )
V.                                   )
                                     )        **MEMORANDUM OPINION**
CORRECT CARE SOLUTIONS, LLC, *et*    )                **&**
*al.*,                               )             **ORDER**
                                     )
        Defendants.                  )

*** *** *** ***

Plaintiffs Ruben Rios Salinas, Brian Woodcock, Keath Bramblett, and Jessica Lawrence
are dissatisfied with the level of care provided by the Defendants after they were each diagnosed
with the Hepatitis C virus. The Plaintiffs seek class certification on behalf of all Kentucky
inmates also diagnosed with the Hepatitis C virus who are also under the care of Defendants.
Additionally, they seek injunctive relief regarding the Defendants' diagnostic and treatment
practices. For the reasons that follow, the Court agrees that class certification is appropriate.
However, the Plaintiffs' motion for injunctive relief fails to allege sufficient facts to establish a
constitutional violation.

**I**

The facts necessary to resolve these issues are largely uncontested. The named Plaintiffs
in this matter, Ruben Rios Salinas, Brian Woodcock, Keath Bramblett, and Jessica Lawrence, are
inmates, incarcerated with the Kentucky Department of Corrections (KDOC). [R. 1-2 at ¶ 3; R.
36 at ¶ 1.] Each has been diagnosed with the Hepatitis C virus (HCV). *Id.* Defendants are
various official and nonofficial entities, all sued in their individual capacities, charged with
managing the HCV treatment plan for and providing care to inmates. [R. 1-2 at ¶¶ 5–15.]

Plaintiffs believe they have not been provided constitutionally adequate treatment for their HCV infections. [R. 134; R. 135.] Defendants do not contest the facts surrounding the care Plaintiffs have received, but disagree that such care is inadequate. [R. 140 at 3–4.] According to research provided by the Plaintiffs, only around 1% of Americans suffer from HCV, but incarcerated populations experience a significantly higher incidence: at least ten percent, and as many as forty percent, of the inmate population suffers from HCV. [R. 134 at 2.] KDOC has allegedly diagnosed approximately ten percent of their inmates with HCV, though Plaintiffs believe the true number of HCV-positive inmates could be higher. *Id.* at 3.

According to literature provided by the Center for Disease Control and Prevention (CDC), HCV is a blood-borne virus which causes a liver infection known as Hepatitis C. *Hepatitis C Information*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/hepatitis/hcv (last visited June 5, 2019). The infection begins as "acute hepatitis C," which occurs within the first six months after exposure, but left untreated can evolve into "chronic hepatitis C." *Hepatitis C Questions and Answers for the Public*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/hepatitis/hcv/cfaq.htm#overview (last visited June 5, 2019). The CDC indicates people with acute hepatitis C should only be considered for treatment if the infection becomes chronic. *Id.*

Since approval in 2011, direct acting antivirals (DAAs) have been successful in eliminating the virus in HCV patients. [R. 135-1 at 3.] DAAs boast both a higher cure rate as well as a higher initial price tag. *Id.* at 3–7. Plaintiffs bring this action, in part, because the Defendants "ration" DAA treatment, only giving DAA treatment to approximately five percent of the infected population. [R. 134 at 3.] Defendants do not disagree with Plaintiffs' facts, and do not claim to be giving DAA treatment to all HCV patients. Instead, Defendants argue that

giving DAAs to all HCV-infected is not recommended, and "inmates receive differing levels of monitoring and testing specific to their HCV." [R. 139 at 8; R. 140 at 4–5.]

## II

### A

As an initial matter, Plaintiffs have requested the Court certify a class of "all HCV-infected inmates in Kentucky prisons for the purpose of injunctive relief." [R. 134 at 9.] Following that request, Plaintiffs have also filed a motion for permanent injunction "requiring Defendants to adopt policies that meet the standard of care," specifically requesting opt-out screening and direct acting antiviral treatment for all HCV-infected inmates. [R. 135 at 4.]

This Court has broad discretion in deciding whether to certify a proposed class. *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). This is so because a "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" and is subject to strict requirements under Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). To warrant certification, class members must not only satisfy Article III standing requirements, but must also "satisfy all four of the Rule 23(a) prerequisites— numerosity, commonality, typicality, and adequate representation—and fall within one of the three types of class actions listed in Rule 23(b)." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (*en banc*)). "The party seeking class certification has the burden to prove the Rule 23 certification requirements." *Id.* (citing *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079). The party opposing certification need not disprove the requirements. *See id.*

The requirements for standing outlined by Article III of the United States Constitution apply equally to class action lawsuits. *Sutton v. St. Jude Medical S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005). The "irreducible" constitutional minimum of standing contains three elements: an injury in fact, a causal connection, and likely redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiff in a suit must have suffered an "injury in fact," defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations omitted). Next, the plaintiff must demonstrate a "causal connection" between this injury and the alleged conduct of the defendant; "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (internal citations omitted). Finally, a favorable decision for the plaintiff must likely redress this injury, and relief must be more than merely speculative. *Id.* at 561.

Plaintiffs seeking the certification of a class must prove two additional components in order to show they have standing to proceed as a class. The proposed class must be identifiable and unambiguous, and the named representatives must be members of the proposed class. *Pilgrim v. Universal Health Card, LLC*, No. 5:09-cv-879, 2010 WL 1254849, *1 (N.D. Ohio Mar. 25, 2010), *aff'd*, 660 F.3d 943 (6th Cir. 2011). In a properly defined class, only members who have standing to file suit in their own right would be included. *Chaz Concrete Co., LLC v. Codell*, No. 3:03-cv-52-KKC, 2006 WL 2453302, at *6 (E.D. Ky. Aug. 23, 2006). For that reason, the Court may deem a proposed class overly broad if such a class would incorporate members who neither have suffered harm nor are at risk to suffer such harm at the hands of the defendant. *Id.* (quoting *McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001).

The Court is not required to inquire into the merits of the case in order to determine whether a person is a member of a class. *Bostick v. St. Jude Med., Inc.*, No. 03-2626 BV, 2004 WL 3313614, *16 (W.D. Tenn. 2004). Rather, "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (quoting 5 James W. Moore, *et al.*, *Moore's Federal Practice* § 23.21[3] (Matthew Bender, 3d ed. 1997)). Plaintiffs, as the party invoking jurisdiction, bear the burden of proof on each requirement for standing. *Id.*; *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007). The parties generally agree on the pertinent facts, arguing instead over whether the care provided by Defendants is inadequate as a matter of law.

Defendants arguments that the proposed class lacks standing, specifically because Plaintiffs Brian Woodcock and Keath Bramblett have received anti-viral treatments and are therefore "cured," are misplaced. [R. 138 at 15.] The proposed class includes only those inmates who are infected with HCV. [R. 134 at 9.] However, if Mr. Woodcock and Mr. Bramblett are no longer infected with HCV, neither Mr. Woodcock nor Mr. Bramblett would be considered a member of the class. Their infection status does not destroy standing for the members of the proposed class who *are* infected with HCV. The Court therefore denies Defendants' claims that the class, defined as "all HCV-infected inmates in Kentucky prisons," [R. 134 at 9], lacks standing. However, in doing so, the Court reserves ruling on whether Mr. Woodcock and Mr. Bramblett are proper members of the class until that issue is properly before the Court.

Because at this stage any Article III issues in this case are dependent on whether a class is certified, the final determination of standing will be resolved as informed by Rule 23. *Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 612–13 (1997).  This Court "therefore follow[s] the path" taken by the Supreme Court, "mindful that Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge, or modify any substantive right.'"  *Id.* at 613 (quoting 28 U.S.C. § 2072(b)); *see also* Fed. R. Civ. P. 82.

**1**

A prospective class must meet a total of seven independent requirements.  Two of these criteria stem from Article III's standing mandates: "an identifiable class must exist, and the definition of the class must be unambiguous, and the named representative must be a member of the class."  *Pilgrim v. Universal Health Card, LLC*, No. 5:09-cv-879, 2010 WL 1254849, *1 (N.D. Ohio Mar. 25, 2010), *aff'd*, 660 F.3d 943 (6th Cir. 2011) (citations omitted).  The remaining five requirements originate in Rule 23(a) and 23(b):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Finally, "In addition to the prerequisites of Rule 23(a), a party seeking class certification must show that the class action is maintainable under Rule 23(b)."

*Id.* (citations omitted).  There must be a statement of the facts indicating that *each* requirement of the rule is fulfilled.  *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011).

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  *Dukes* verified that the district court should not merely presume that the plaintiffs' allegations in the complaint are true for the purposes of class motion without resolving factual and legal issues.  *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 417

(6th Cir. 2012); *see also In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1081 (6th Cir. 1996) (holding

that individual proofs, which "vary from plaintiff to plaintiff," do not satisfy Rule 23(a)).

Rather, this Court must "probe behind the pleadings before coming to rest on the certification

question."[1] *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160

(1982)).

**a**

Initially, Rule 23(a)(1) requires a proposed class to be "so numerous that joinder of all

members is impracticable." A proposed class may satisfy this requirement by demonstrating the

impracticality of joinder. *See, e.g.*, *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 660 (E.D.

Mich. 1995) ("The numerosity requirement mandates that the joinder of all plaintiffs be

impracticable—not impossible."). There is no magic number or strict test for determining

impracticality of joinder. *Senter v. General Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir.

1976). "When class size reaches substantial proportions . . . the impracticability requirement is

usually satisfied by the numbers alone." *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir.

1996); *see also* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.11 (3d ed.

2011).

Regardless, in determining practicability, a court should also consider the geographic

dispersion of the proposed class, the sophistication of proposed class members, and the

reluctance of individual class members to sue. 7A Wright & Miller, *Federal Practice and

Procedure* § 1762 (3d. ed.); *see also Roman v. Korson*, 152 F.R.D. 101, 105–06 (W.D. Mich.

---

[1] Generally, courts should not consider the merits of a suit at the class certification stage. *Eisen v. Carlisle and Jacqueline*, 417 U.S. 156, 177–78 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."). *Wal-Mart Stores, Inc. v. Dukes*, however, indicates some flux within the law, noting that "some overlap with the merits of the plaintiff's underlying claim" is inevitable at the class certification stage. 564 U.S. at 351.

1993); *Young v. Trailwood Lakes, Inc.*, 61 F.R.D. 666, 668 (E.D. Ky. 1974). "When a class numbers in the hundreds or thousands, the impracticability of joinder is obvious." *Mich. State Univ. Faculty Ass'n v. Mich. State Univ.*, 93 F.R.D. 54, 56 n. 1 (W.D. Mich. 1981); *see also* Newberg at § 3:12. For that reason, proposed classes with hundreds of members are routinely held to satisfy the numerosity requirement. *Mich. State Univ. Faculty Ass'n*, 93 F.R.D. at 56. In fact, courts have certified classes with as few as eighteen members. *See, e.g.*, *Cypress v. Newport News Gen. and Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) ("We further are of the opinion that eighteen is a sufficiently large number to constitute a class."); *see also Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) ("[W]e are unwilling as a matter of law to hold that a class of 74 persons does not meet the requirement of numerosity."). Some courts hold that "a class of 40 or more members is sufficient to establish numerosity." *Appoloni v. United States*, 218 F.R.D. 556, 561 (W.D. Mich. 2003). All of this leads to the conclusion that, in determining whether to certify a class, it is not necessary for a court to know the *precise* number of class members. Rather, the Court may rely upon reasonable inferences drawn from the known facts. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079.

Plaintiffs assert their proposed class would contain at least 1,200 Kentucky inmates, and possibly as many as 5,000 Kentucky inmates, who are infected with HCV. [R. 134 at 6.] None of the Defendants contest Plaintiff's claims of numerosity. [R. 138; R. 141 at 3–4.] Because the number of potential class members reaches into the thousands, in addition to the geographic dispersion of the potential members across the state of Kentucky, the Court finds Plaintiffs have satisfied the requirement to prove numerosity.

**b**

Next, in order for a class to be certified under Rule 23(a)(2), there must be "questions of law or fact common to the class." This is because, where there are common questions of law or fact, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). Traditionally, it has been the rule that to satisfy the commonality requirement of Rule 23(a)(2), only one single issue that is common to all members of the class is required, not multiple issues.[2] *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996); *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003) ("Although Rule 23(a)(2) refers to common questions of law or fact, in the plural, there need only be one question common to the class—though that question must be a 'common issue the resolution of which will advance the litigation.'") (quoting *Sprague v. Gen. Motors*, 133 F.3d 388, 397 (6th Cir. 1998)). The language of commonality, however, "is easy to misread, since '[a]ny competently crafted class complaint literally raises common "questions."'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–132 (April 2009)). The essential commonality inquiry, therefore, is not whether common questions exist, "but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (quoting Nagareda, *supra*, at 132). Dissimilarities between members of the proposed class can potentially impede the

---

[2] Many courts have held that when the legality of the defendant's standardized conduct toward all members of the proposed class is at issue, the commonality factor is ordinarily met. *See Appoloni v. United States*, 218 F.R.D. 556, 561 (W.D. Mich. 2003); *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 481 (S.D. Ohio 2004) ("Where, as here, Plaintiffs allege a common course of conduct by Defendants that caused harm, class certification is proper.").

satisfaction of this requirement. *Id.* Indeed, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the *same* injury.'" *Id.* at 349–50 (emphasis added) (quoting *Falcon*, 457 U.S. at 157).

Defendants here argue that Plaintiffs cannot present a common question of law or fact because their medical conditions present individualized inquiries. [R. 138 at 9–10; R. 141 at 5–6.] However, this is not fatal to Plaintiffs' request for class certification. Collectively, Plaintiffs have alleged that the Defendants' policies, procedures, protocols, customs, and/or practices violate the rights granted to inmates by the Eighth and Fourteenth Amendments to the United States Constitution. [R. 126 at 16.] Plaintiffs also claim violations under the Americans with Disabilities Act and the Rehabilitation Act. *Id*. at 17. These unconstitutional claims present the *same* questions of law: do the Defendants' systemic treatment of inmates diagnosed with chronic HCV constitute deliberate indifference to a serious medical need? The same questions exist for whether the practices of the Defendants constituted negligence, gross negligence, and intentional infliction of emotional distress.

Other courts have reached the same conclusion. *See, e.g. Postawko v. Mo. Dept. of Corrections*, 910 F.3d 1030, 1038–39 (8th Cir. 2018) (affirming class certification of inmates challenging Missouri Department of Corrections' policies relating to screening and care of HCV: "Here the physical symptoms eventually suffered by each class member may vary, but the question asked by each class member is susceptible to common resolution."); *Buffkin v. Hooks*, Case No. 1:18CV502, 2019 WL 12827835 (M.D. N.C. Mar. 20, 2019) (granting class certification to "all current and future prisoners in DPS custody who have or will have chronic hepatitis C virus and have not been treated with direct-acting antiviral drugs"); *Stafford v. Carter*, No. 1:17-cv-00289-JMS-MJD, 2018 WL 1140388 at *5 (S.D. Ind. Mar. 2, 2018) (finding

common questions of law in whether defendants' practices involving treatment of HCV violated the Eighth Amendment, Americans with Disabilities Act, or Rehabilitation Act, and ultimately granting class certification); *Hoffer v. Jones*, 323 F.R.D. 694, 697–98 (N.D. Fl. Nov. 17, 2017) (granting class certification for "all current and future prisoners in the custody of the Florida Department of Corrections who have been diagnosed, or will be diagnosed with chronic hepatitis C virus" after finding common questions of law); *Graham v. Parker*, Case No. 3-16-cv-01954, 2017 WL 1737871 at *4 (M.D. Tenn. May 4, 2017) (finding plaintiffs' claims "that Defendants' current protocols and the failure to diagnose and treat Hepatitis C with the most recent and generally accepted community standards of treatment violated the U.S. Constitution" satisfied the commonality requirement); *B.E. v. Teeter*, CASE NO. C16-0227-JCC, 2016 WL 3939674 at *3 (W.D. Wash. July 21, 2016) (finding plaintiffs had presented a common question of law, whether the HCV treatment policy violated the Medicaid Act, and ultimately certifying the proposed class). Plaintiffs have requested certification for the purposes of injunctive relief and determining whether the Defendants' practices regarding HCV violate the law. Deciding this question will be dispositive of all Plaintiffs' claims, and therefore, the Court finds commonality here.

## c

Under Rule 23(a)(3), "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." This requirement seeks to ensure that the interests of the named representatives align with the interests of the members of the proposed class. *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). A named plaintiff's claim is typical if the claim arises from the same practice, event, or course of conduct giving rise to the other class members' claims, and if all claims are based on the same legal theory. *Id.* Although

the class representatives' claims must be typical, "Rule 23 does not require absolute homogeneity." *Tucker v. Union Underwear Co., Inc.*, 144 F.R.D. 325, 329 (W.D. Ky. 1992). Rather, "Rule 23(a)(3) typicality 'determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). The inquiry focuses special attention on "differences between class representative claims and class claims that would defeat the representative nature of the class action." *Van Vels v. Premier Athletic Center of Plainfield, Inc.*, 182 F.R.D. 500, 510 (W.D. Mich. 1998) (citations omitted).

Plaintiffs assert they were not diagnosed with HCV as early as they should have been, their treatment for HCV did not begin as early as it should have begun, and when they did receive treatment, it did not meet the established standard of care. [R. 134 at 6.] Defendants argue the Plaintiffs' individualized timelines, treatments, and symptoms are fatal to the typicality requirement here. [R. 138 at 10–11; R. 141 at 6–7.] Additionally, because two of the named plaintiffs, Bramblett and Woodcock, have received testing and treatment, Defendants argue they have no claims left to pursue. *Id*.

These differences, however, do not destroy typicality. The requirements of commonality and typicality overlap significantly. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011). Plaintiffs' claims regarding HCV treatment and diagnoses arise from the same practice, event, or course of conduct giving rise to the other class members' claims, and all claims are based on the same legal theory. *In re Am. Med. Sys. Inc.*, 75 F.3d at 1082. Again, other courts have agreed, finding typicality among inmates suffering from HCV, regardless of their individualized treatments. *See, e.g. Postawko v. Mo. Dept. of Corrections*, 910 F.3d 1030, 1039

(8th Cir. 2018) (finding "factual variations" among inmates with HCV did not undermine typicality); *Stafford v. Carter*, No. 1:17-cv-00289-JMS-MJD, 2018 WL 1140388 at *7 (S.D. Ind. Mar. 2, 2018) (finding the specifics of inmates' diagnoses for HCV and medical histories did not destroy typicality); *Hoffer v. Jones*, 323 F.R.D. 694, 698–99 (N.D. Fl. Nov. 17, 2017) (finding typicality even among inmates with HCV diagnoses who exhibited no symptoms); *Graham v. Parker*, Case No. 3-16-cv-01954, 2017 WL 1737871 at *4–5 (M.D. Tenn. May 4, 2017) (finding typicality among inmates with varying severity of HCV because all plaintiffs sought the same injunctive relief); *B.E. v. Teeter*, CASE NO. C16-0227-JCC, 2016 WL 3939674 at *3–4 (W.D. Wash. July 21, 2016) (finding plaintiffs' claims were typical, even if they previously suffered varying injuries or currently experienced different health care needs).

### d

Finally, Rule 23(a)(4) allows a class to be certified only if "the representative parties will fairly and adequately protect the interests of the class." This is an essential prerequisite for due process, as a final judgment in a class action binds all class members. *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (citing *Hansberry v. Lee*, 311 U.S. 32 (1940)). This circuit applies a two-part test for determining the adequacy of representation. First, the named representatives "must have common interests with the unnamed members of the class," and second, it must be apparent that the named representatives "will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). This "adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083.

The named Plaintiffs in this matter seek injunctive relief declaring the current practices of Defendants to be a violation of law. In response, Defendants argue that Mr. Woodcock and Mr. Bramblett have already received treatment, and therefore, cannot adequately represent the class. [R. 138 at 17–18.] However, Mr. Woodcock and Mr. Bramblett are not the only named representatives, and none of the Defendants specifically contest the adequacy of Plaintiffs Ruben Rios Salinas and Jessica Lawrence, neither of which have received treatment. If, in fact, Mr. Woodcock and Mr. Bramblett no longer are infected with HCV, neither of them would be included as class members for the proposed class of "all HCV-infected inmates in Kentucky prisons for the purpose of injunctive relief." Instead, Mr. Salinas and Ms. Lawrence would remain in the class as representatives.

Defendants have not argued that Mr. Woodcock's and Mr. Bramblett's interests are adverse or in conflict with the interests of the potential class members. Both Mr. Woodcock and Mr. Bramblett have also asserted claims of damages on behalf of themselves, meaning injunctive relief on behalf of the class would also be favorable to their claims. Adequacy is met if the representative parties would "fairly and adequately protect the interests of the class," and Defendants have presented no indication that the named Plaintiffs here would not do so. Fed. R. Civ. Pro. 23(a)(4). However, because the Plaintiffs seem to concede potential shortfalls with Mr. Woodcock and Mr. Bramblett as named Plaintiffs [R. 142 at 6], and because none of the Defendants contest the adequacy of Mr. Salinas or Ms. Lawrence [R. 138; R. 141], the Court finds it appropriate to name only Mr. Salinas and Ms. Lawrence as representatives of the class. Furthermore, Plaintiffs are represented by counsel who has litigated numerous class actions and matters involving inmate health care. [R. 134 at 6.] Defendants do not contest the adequacy of Plaintiffs' counsel, and the Court finds Plaintiffs have met the requirements under Rule 23(a)(4).

Plaintiffs seeks certification only pursuant to Rule 23(b)(2). [R. 134 at 6.] Rule 23(b)(2) applies exclusively in cases when class members seek the same declaratory or injunctive relief and do not assert individualized claims for damages. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011). Generally, claims for monetary relief are inappropriate under Rule 23(b)(2). *Id.*; *see also id.* at 363 ("Rule 23(b)(2) 'does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages'" (quoting Fed. R. Civ. P. 23, Advisory Committee's Note to 1966 Amendment, 39 F.R.D. 69, 102 (1966))). Rather, "'[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what (b)(2) is meant to capture." *Id.* at 361 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Rule 23(b)(2) "reflects a series of decisions involving challenges to racial segregation—conduct that was remedied by a single classwide order." *Id.* "In *none* of the cases cited by the Advisory Committee as examples of (b)(2)'s antecedents did the plaintiffs combine any claim for individualized relief with their classwide injunction." *Id.* (emphasis added) (citing Advisory Committee's Note, 39 F.R.D. at 102). This is because permission to combine individualized and classwide relief within a single Rule 23(b)(2) class is inconsistent with the structure of Rule 23(b)." *Id.*

The named Plaintiffs in this case have asserted claims for damages. [R. 126.] However, the request for class certification pertains only to the claims of injunctive relief. Defendants argue the requests for damages invalidates Plaintiffs' standing under Rule 23(b)(2) but cite to no laws requiring that result. [R. 141 at 9–10.] The key to class certification under Rule 23(b)(2) is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or

to none of them." *Wal-Mart*, 564 U.S. at 360 (citing Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (April 2009)). Plaintiffs' request here, the injunctive relief regarding screening and treatment, is indivisible as to the class members. Plaintiffs have challenged a lack of conduct applicable to all inmates with HCV. Specifically, in the Sixth Circuit, "certifying declaratory relief under Rule 23(b)(2) is permissible even when the declaratory relief serves as a predicate for later monetary relief, which would be certified under Rule 23(b)(3)." *Gooch v. Life Inv'rs Co. of Am.*, 672 F.3d 402, 427–49 (6th Cir. 2012). Final injunctive relief would be appropriate to the entire class, and the Court will certify the class only for the purposes of injunctive and declaratory relief. Because the established procedures for treating and diagnosing HCV remain the same for all inmates, certification under Rule 23(b)(2) is appropriate for such relief. *Id*., *see also, Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 279–80 (6th Cir. 2018).

### 3

The proposed class action meets all requirements under Federal Rule of Civil Procedure 23(a). Additionally, Plaintiffs' requests for injunctive relief satisfy the requirements for certification under Rule 23(b)(2). Defendants further argue that the class certification is not a superior method to resolve this matter, but the Court disagrees. As is the case with many other certified classes, there are individualized concerns, in this case, those regarding specific inmates' treatment plans and varying stages of the disease. However, in resolving a request for injunctive or declaratory relief, the Court would not be "'second guessing' the decisions of healthcare providers" as Defendants allege. [R. 138 at 19.] Instead, Plaintiffs request the Court review the established procedures to ensure Defendants' are providing a standard of care that does not violate constitutional standards. Furthermore, the Court's decision is buttressed by various other

United States District Courts, each of which have granted certification to similarly situated inmates diagnosed with HCV and requesting injunctive or declaratory relief. *See, e.g. Postawko v. Mo. Dept. of Corrections*, 910 F.3d 1030 (8th Cir. 2018); *Stafford v. Carter*, No. 1:17-cv-00289-JMS-MJD, 2018 WL 1140388 (S.D. Ind. Mar. 2, 2018); *Hoffer v. Jones*, 323 F.R.D. 694, 698 (N.D. Fl. Nov. 17, 2017); *Graham v. Parker*, Case No. 3-16-cv-01954, 2017 WL 1737871 at *4–5 (M.D. Tenn. May 4, 2017); *B.E. v. Teeter*, CASE NO. C16-0227-JCC, 2016 WL 3939674 at *3–4 (W.D. Wash. July 21, 2016).

## B

To obtain a permanent injunction, a plaintiff "must first establish that [he has] suffered a constitutional violation." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 602 (6th Cir. 2006). And even if the Court finds that a violation occurred, the plaintiff must also "demonstrate: (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).[3] The moving party bears the burden of demonstrating these elements. *See O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. 2015); *see also Waskul v. Wawshtenaw Cty. Cmty. Mental Health*, 900 F.3d 250, 255–56 (6th Cir. 2018).

---

[3] Although the Defendants do not argue that Kentucky's sovereign immunity bars this suit, the Court will briefly note that this case falls comfortably within the boundaries of the *Ex Parte Young* exception. This doctrine empowers federal courts to "enjoin state officials to conform their future conduct to the requirements of federal law," notwithstanding the state's typical immunity from suit. *Quern v. Jordan*, 440 U.S. 332, 337 (1979) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). The exception "rests on the premise–less delicately called a 'fiction'–that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Va. Office for Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011).

The primary claim brought by the Plaintiffs concerns an alleged violation of their constitutional rights. Such allegations are properly brought under 42 U.S.C. § 1983. Section 1983 does not create substantive rights but, rather, "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States . . .." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Mertik v. Blalock*, 983 F.2d 1353, 1359 (6th Cir. 1993). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989) (additional citations omitted)).

Plaintiffs and Defendants agree, Defendants offer DAA treatment to some prisoners infected with HCV, but not all infected prisoners, and Defendants test a sample population of prisoners for HCV, but testing is not standard for all prisoners. [R. 139 at 8–9.] Parties disagree on whether the Defendants' practices are constitutionally adequate as a matter of law. [R. 135; R. 139; R. 140.] The Constitution guarantees "a right to adequate medical treatment" for both convicted prisoners and pretrial detainees. *Estelle v. Gamble*, 424 U.S. 97 (1976). Inadequate care can only constitute a violation of the Eighth Amendment if the government actor knew that the care provided or withheld would pose a serious risk to the inmate, but consciously disregarded that risk all the same. *Rhinehart v. Scutt*, 894 F.3d 721, 736 (6th Cir. 2018). Mere failure to provide adequate care does not *per se* rise to the level of constitutional violation. *Id*. at 737. To succeed on an action for deliberate indifference to medical needs, plaintiffs have been required to show: (i) an objectively substantial risk of serious harm, and (ii) that the jail or

county officials were "subjectively aware of the risk." *Harbin v. City of Detroit*, 147 F. App'x 566, 570 (6th Cir. 2005).

The first component of this inquiry is an objective one; a plaintiff must demonstrate the alleged deprivation was serious enough to violate the Eighth Amendment. *Rhinehart*, 894 F.3d at 737. If a prison fails to provide treatment for an inmate's "serious medical condition," such satisfies this objective inquiry. *Id.* (citing *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 896–99 (6th Cir. 2004). A plaintiff can also succeed at demonstrating this objective component by indicating the care was grossly inadequate, defined as "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 843 (6th Cir. 2001). In order to show the care received was "grossly inadequate," plaintiffs must introduce medical proof that the treatment afforded was inadequate to treat their condition or their pain. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). This often requires expert testimony.

Defendants do not deny that the Plaintiffs have HCV, but rather, that the Plaintiffs are, and will continue to be, afforded constitutionally adequate medical treatment. Plaintiffs disagree; however, their motion for injunctive relief is woefully insufficient as to allegations of the alleged deprivation. In less than six pages, Plaintiffs conclude that HCV is a serious medical condition and that Defendants are systematically failing to provide treatment that meets the accepted standard of care. [R. 135.] Throughout, Plaintiffs point to expert testimony and expert reports provided by Stacey Beth Trooskin, M.D., Ph.D., MPH, who states that she believes the procedures established by Defendants do not meet the standard of care. [R. 135-1.] Plaintiffs

also contrast Dr. Trooskin's report with the report of Defendants' expert Louis Shicker, M.D., who claims the procedures, in fact, do meet the standard of care. [R. 135-2.]

However, Plaintiffs fail to identify specific procedures they believe to be constitutionally inadequate care, relying merely on the attachment of the two conflicting expert reports and conclusory statements alleging "unreasonable and substantial risk of serious present and future medical and physical harm" to inmates infected with HCV. [R. 135 at 5.] The Court has no doubt that failure to properly diagnose and/or treat HCV causes discomfort or pain to those living with its symptoms. But Plaintiffs here have not met their burden to establish that the procedures amount to grossly inadequate treatment, as a mere failure to provide adequate care does not require a finding of constitutional inadequacy. *Rhinehart*, 894 F.3d 737.

Even if a moving plaintiff can demonstrate objectively that the care provided or withheld was substantially serious, the plaintiff must also show a "sufficiently culpable state of mind" on behalf of the government actors. *Santiago*, 734 F.3d at 591. This state of mind is more than mere negligence, amounting instead to criminal recklessness. *Id*. Prison doctors have more than a simple duty to provide "some treatment" to inmates with serious medical needs; instead they must "provide medical treatment to the patient without consciously exposing the patient to an excessive risk of serious harm." *Id*. (quoting *LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001). Errors in medical judgment to do not constitute deliberate indifference, instead, officials must have subjectively perceived facts from which they may have inferred substantial risk to the inmates, subjectively inferred that risk, but then disregarded the perceived risk, particularly by failing to attempt to abate the risk. *Rhinehart*, 894 F.3d at 738 (citations omitted). Because defendants rarely admit their subjective perceptions on this matter, plaintiffs are permitted to prove subjective recklessness relying only on circumstantial evidence. *Id*.

Plaintiffs' motion lacks any mention at all of the subjective component. [R. 135.] Even if the Court assumes that Defendants failed to provide a constitutionally adequate level of care for Plaintiffs' HCV, Plaintiffs have failed to even allege a "sufficiently culpable state of mind." In their discussion, Plaintiffs mention Defendants had failed to provide care because it was too expensive, but do not argue this is criminal recklessness. *Id*. at 5–6. True, Dr. Shicker believes that mandating DAA treatment for all inmates testing positive for HCV would be an "unnecessary onus" financially for the Defendants and for Kentucky taxpayers. [R. 135-2 at 5–6.] But Plaintiffs then require the Court to infer, based on this information alone, that a limited scope of treatment necessarily infers a substantial risk *and* that Defendants deliberately ignored this risk. Without substantially more evidence on the matter, the Court cannot assume a *mens rea* simply because Plaintiffs imply one. *See Santiago*, 734 F.3d at 592–93.

The lack of information provided by the Plaintiffs necessarily leads the Court to conclude the Plaintiffs have not met their burden of proof to establish a constitutional violation. *See Harbin v. City of Detroit*, 147 F. App'x 566, 570 (6th Cir. 2005). Therefore, the Court need not discuss the other requirements for granting a permanent injunction. However, because the Court's decision is based entirely on the Plaintiffs' failure to meet the burden required to establish a constitutional violation, the Court also exercises its duty to avoid unnecessary decisions of constitutional questions. *See Tower Realty v. City of East Detroit*, 196 F.2d 710, 724 (6th Cir. 1952). Specifically, the Court declines to reach a conclusion on whether the practices of the Defendants in diagnosing and treating inmates with HCV violates the United States Constitution.

## III

Class certification is appropriate here; all requirements under Federal Rule of Civil Procedure 23 have been established.  Furthermore, other District Courts have agreed that class certification is appropriate for inmates seeking improved HCV care.  However, the Court cannot resolve a constitutional question on bare assertions and speculations simply because the Plaintiffs believe Defendants should be distributing DAAs to all infected inmates.  Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1.      Plaintiffs' Motion to Certify Class [**R. 134**] is **GRANTED**;

2.      The Court **CERTIFIES** a class defined as "all inmates in Kentucky prisons who have been diagnosed, or will be diagnosed, with chronic hepatitis C virus (HCV) for the purpose of injunctive relief";

3.      Plaintiff Ruben Rios Salinas and Plaintiff Jessica Lawrence **SHALL SERVE** as class representatives;

4.      Gregory Allen Belzley, Camille Bathurst, and Aaron Joseph Bentley, attorneys from the law firm Belzley, Bathurst & Bentley, are **APPOINTED** as class council;

5.      Plaintiffs' Motion for Permanent Injunction [**R. 135**] is **DENIED**;

6.      Hearing on this matter, scheduled for July 25, 2019, is **CANCELLED**; and

7.      The parties' Joint Motion to Continue Evidentiary Hearing [**R. 159**] is **DENIED AS MOOT**.

This the 12th day of July, 2019.

Gregory F. Van Tatenhove
United States District Judge