UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| BRIAN WOODCOCK, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil No. 3:16-cv-00096-GFVT |
| v. ) | |
| ) | |
| CORRECT CARE SOLUTIONS, LLC, *et al.*, ) | **MEMORANDUM OPINION** |
| ) | **&** |
| ) | **ORDER** |
| Defendants. ) | |
| ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This case is primarily about the adequacy of medical treatment for state inmates with chronic Hepatitis C (HCV) viral infections. Plaintiffs challenge whether the failure of current Kentucky Department of Corrections (KDOC) policies and protocols to timely provide Direct Acting Antiviral drugs (DAA) to treat all HCV inmates constitutes deliberate indifference to their serious medical needs in violation of the Eighth and Fourteenth Amendments, or otherwise constitutes negligence or gross negligence. In response, Defendants contend KDOC's HCV treatment policies and protocols are objectively reasonable and are the result of subjective medical judgment. The Defendants have moved for summary judgment on the Plaintiffs' claims, and for the reasons that follow, the Court GRANTS the Defendants' motion as to the claims under the Rehabilitation Act and American with Disabilities Act and the § 1983 Eighth Amendment claim and REMANDS the Plaintiffs' remaining state law Negligence and Intentional Infliction of Emotional Distress claims for further consideration by the state court.

# I

## A

This case began in 2015 in Franklin Circuit Court in Franklin County, Kentucky. [R. 38 at 1.] Mr. Salinas filed a Petition for Writ of Mandamus against then-Commissioner LaDonna Thompson, asking the Court to order treatment for his HCV infection. [*Id*. at 1–2]. On November 14, 2016, Mr. Salinas filed an Amended Class Action Complaint, naming additional plaintiffs and defendants. [*Id*. at 2]. The case was removed to this Court on December 7, 2016. [R. 1.] On August 18, 2017, Ms. Lawrence moved to intervene, adding Mr. Erwin as an additional defendant. [R. 33.] Magistrate Judge Edward B. Atkins permitted intervention. [R. 35.] On March 1, 2018, Plaintiffs filed motions to certify their class under Rule 23(b)(2). On July 12, 2019, this Court issued a Memorandum Opinion & Order that certified the Plaintiffs' class of "all inmates in Kentucky prisons who have been diagnosed, or will be diagnosed, with chronic hepatitis C virus (HCV) for the purpose of injunctive relief." [R. 162 at 22.] Also, this Court appointed Plaintiffs Salinas and Lawrence as class representatives, appointed Plaintiff Class's counsel, and denied Plaintiffs' motion for a permanent injunction. [*Id.*]

## B

The Plaintiffs in this matter are inmates, incarcerated with the Kentucky Department of Corrections. [R. 1-2 at ¶ 3.] Each of them have been diagnosed with the Hepatitis C virus. [*Id*.] Defendants are various official and nonofficial entities, all sued in their individual capacities, charged with managing the HCV treatment plan for and providing care to inmates. [R. 1-2 at ¶¶ 5–15.] Defendant James Erwin was the former Commissioner of the KDOC, responsible for its operations, policies, and employment. [R. 36 at ¶ 4; R. 178.] The original Plaintiffs did not sue Mr. Erwin, but he was added to this lawsuit by Intervening Plaintiff Jessica Lawrence. However,

Plaintiffs have recently dismissed Defendant James Erwin from the suit in his individual capacity. [R. 186.] Defendants Rodney Ballard and LaDonna Thompson are former Commissioners of the KDOC. [*Id.* at ¶ 5–6.] Defendant Doug Crall, M.D., is the Medical Director of the KDOC, responsible for policies, procedures, and employment concerning the inmates' medical care. [R. 1-2 at ¶ 12.] Defendant Cookie Crews is the Health Services Administrator of the KDOC. [*Id.* at ¶ 13.] Defendant Frederick Kemen, M.D., is responsible for managing the HCV treatment plan for KDOC inmates. [*Id.* at ¶ 14.] Defendant Denise Burkett is the medical director of the KDOC. [R. 126 at ¶ 13.] Defendant Correct Care Solutions, Inc., provides medical services to inmates of the KDOC. [*Id.* at ¶ 15.]

Plaintiffs believe they have not been provided constitutionally adequate treatment for their HCV infections. [R. 134; R. 135.] According to their complaint, Defendants did not employ qualified individuals, did not adequately train these employees, and did not create or enforce necessary policies and procedures to ensure proper care. [R. 1-2 at ¶ 16.] Plaintiff Brian Woodcock is housed at the Kentucky State Penitentiary (KSP). [*Id.* at ¶ 52.] In December 2011, a biopsy indicated the fibrosis in his liver had advanced from Stage 1 to Stage 2. [*Id.*] Under Dr. Steven Shedlofshky's standards, he was first told he qualified for antiviral prescription medication. [*Id.*] But Dr. Shedlofsky then left KDOC, and KDOC found Mr. Woodcock did not qualify for medication. [*Id.*] Four years later, after his infection further progressed, he began receiving treatment. [*Id.* at ¶53.] Plaintiff Ruben Rios Salinas is also housed in KSP and has been denied testing and treatment of his HCV infection. [*Id.* at ¶¶ 54–55.] Plaintiff Keath Bramblett, another inmate at KSP, contracted HCV during incarceration. [*Id.* at ¶ 56.] He has been denied both participation in any program working with food and treatment for his condition. [*Id.* at ¶¶ 56–57.] Mr. Bramblett has been ordered to share razors with other inmates.

[*Id*. at ¶ 57.] Plaintiff Jessica Lawrence has been diagnosed with HCV but has not received any treatment. [R. 36 at 5.]

Defendants do not contest the facts surrounding the care Plaintiffs have received, but disagree that such care is inadequate. [R. 140 at 3–4.] Plaintiffs sue Defendants on four separate theories. First, Plaintiffs sue Defendants under § 1983 for violations of the Eighth and Fourteenth Amendments to the United States Constitution. [R. 1-2 at ¶ 61.] Also, Plaintiffs claim Defendants violated the Americans with Disabilities Act and the Rehabilitation Act of 1978 for failure to reasonably accommodate their infections. [*Id*. at ¶ 64.] Based on the failure to meet the standard of care, Plaintiffs also believe Defendants acted with negligence and gross negligence. [*Id*. at ¶ 66.] Finally, Plaintiffs sue for Intentional Infliction of Emotional Distress. [*Id*. at ¶ 68.] They seek both injunctive relief for care and damages for lack of treatment. [R. 1-2 at 19; R. 36 at 9.]

**B**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden is initially on the moving party to inform

"the district court of the basis of its motion, and [to identify] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the nonmoving party, "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Further, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, "the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## II

### A

Defendants argue that Plaintiffs Woodcock and Bramblett failed to exhaust available administrative remedies prior to filing this action. [R. 168 at 23.] The Prison Litigation Reform Act requires prisoners to exhaust all available administrative remedies before filing suit under § 1983. *Lee v. Wiley*, 789 F.3d 673, 677 (6th Cir. 2015). The Sixth Circuit holds that since the language of § 1997e(a) makes exhaustion a condition precedent for the filing of a § 1983 claim, "The prisoner . . . may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). This remains true even if exhaustion of the remedies is perceived as "futile," *Booth v. Churner*, 532 U.S. 731, 741 n.6, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001), or if the various stages of the appeals process within the prison system are optional, *Owens v. Keeling*, 461 F.3d 763, 770 n.4. (6th Cir. 2006).

5

Defendants have discovered that Mr. Woodcock filed a Healthcare Grievance prior to filing this lawsuit in regard to his inadequate medical treatment for HCV, requesting a re-biopsy of his liver. [R. 168 at 24.] As Defendants point out, Mr. Woodcock's only Grievance submitted "did not raise any grievances against CCS, Dr. Kemen, KDOC Defendants, or the HCV treatment protocol in place at that time." [*Id*.] Mr. Bramblett filed two Grievances relating to his treatment for HCV, but he did not appeal either of these Grievances according to his deposition taken. [*Id*.] Plaintiffs Woodcock and Bramblett's cases are therefore reasonably simple to decide: because they did not fulfill their obligation to seek complete redress through the administrative process in prison as an initial matter, both of their § 1983 claims were prematurely filed, and must be dismissed.

In addition, it has also been discovered that Plaintiffs Woodcock and Bramblett have been cleared of HCV. [R. 168 at 26; R. 182 at 35.] Therefore, Mr. Woodcock and Mr. Bramblett can no longer be part of the class that represents all inmates in Kentucky prisons who have been diagnosed, or will be diagnosed, with chronic HCV. The requirement to exhaust administrative remedies is mandatory, and "applies to all federal claims seeking redress for prison circumstances or occurrences regardless of the type of relief being sought." *Lee*, 789 F.3d at 677. Plaintiffs have not presented any evidence that contradicts Defendants' arguments and only request that the Court stay Woodcock's and Bramblett's claims pending exhaustion. However, due to the fact that neither Defendant is able to be apart of class and failed to exhaust all administrative remedies according to KRS 454.415, all claims by Woodcock and Bramblett against the Defendants must be dismissed.

## B

The primary claim brought by Plaintiffs concerns an alleged violation of their constitutional rights. Such allegations, as well as allegations concerning a prisoner's medical needs, are properly brought under 42 U.S.C. §1983. Section 1983 does not create substantive rights but, rather, "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States. . . ." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982); *Mertik v. Blalock*, 983 F.2d 1353, 1359 (6th Cir. 1993). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (citing *Graham v. Connor,* 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (additional citations omitted)).

"The government has an obligation to provide medical care for those whom it is punishing by incarceration. But mere failure to provide adequate medical care to a prisoner will not violate the Eighth Amendment." *Rhinehart v. Scutt,* 894 F.3d 721, 736 (6th Cir. 2018). In those circumstances, a plaintiff must demonstrate that the prison doctors and/or prison officials were deliberately indifferent to the prisoner's medical needs. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). "Deliberate indifference" requires both that the injury be objectively serious and that the defendant subjectively knew of the risk but disregarded it. *Id*. at 938–39. "A prison official exhibits deliberate indifference and thus violates the Eighth Amendment by, inter alia, intentionally denying or delaying access to medical care for serious medical needs." *Johnson v.*

*Million*, 60 F. App'x 548, 549 (6th Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). This is the standard because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Rhinehart*, 894 F.3d at 737 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)) (internal quotation marks and citation omitted).

**1**

The objective component of an Eighth Amendment claim based on a lack of medical care requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

When the claim consist of whether a particular treatment should be provided, the inmate must show that "the inmate's symptoms 'would [ ] be[ ] alleviated by' the treatment and the inmate's condition require[s] that treatment." *Rhinehart*, 894 F.3d 721, at 749 (citing *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017)). If the inmate is able to establish this, he or she must then move on to show that the treatment actually being provided is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (citing *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005)). "To meet this burden, Plaintiffs must present two types of medical proof: (1) that the provided treatment was not adequate medical treatment for the inmate's condition, and (2) the treatment provided had a detrimental effect." *Atkins v. Parker*, 2019 LEXIS 168976, 2019 WL

8

4748299 at *38 (M.D. Tn Sept. 30, 2019) (citing *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013); *Blackmore*, 390 F.3d 890, at 898; *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001); *Anthony*, 701 F. App'x 460, at 464).

The Sixth Circuit noted in making its determination in *Rhinehart* that "the Eighth Amendment does not require that prisoners receive 'unqualified access to health care' of their choice." *Id*. (citing *Rhinehart*, 894 F.3d at 750 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)). Also, the Court points out that "an inmate is entitled to adequate medical care, but 'not the best care possible.'" *Id*. (quoting *Rhinehart*, 894 F.3d at 750 (citing *Miller*, 408 F.3d at 819)). "Neither an inmate's 'disagreement with the testing and treatment he has received,' nor 'a desire for additional or different treatment,' rises to the level of an Eighth Amendment violation unless the treatment actually being provided is objectively harmful enough to establish a constitutional violation." *Id*. at 38–39 (citing *Rhinehart*, 894 F.3d at 740 (quoting *Dodson v. Wilkinson*, 304 F. App'x 434, 440 (6th Cir. 2008)). Additionally, the Court has held that "as a general rule, a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah v. Krishar*, 865 F.3d 361, 372 (6th Cir. 2017).

The court in *Rhinehart* applied these specific components to analyze the objective element to the Eighth Amendment claim. Even though the plaintiffs' expert "testified that a TIPS procedure is the 'gold standard' of treatment for patients with ESLD," the alternative treatment the inmate actually received, "which included 'regular monitoring and pain medication,' did not rise to the level of constitutional inadequacy." *Atkins*, 2019 LEXIS 168976 at *39 (quoting *Rhinehart*, 894 F.3d at 750 (citing *Johnson v. Million*, 60 F. App'x 548, 549 (6th Cir. 2003)). Specifically, the Court of Appeals in *Johnson* held "that an inmate with liver

9

disease could not establish deliberate-indifference claim against his prison healthcare providers when the inmate was repeatedly examined for his pain and prescribed medications, ordered blood tests, and advised about his diet." *Id*.

a

As Plaintiffs' expert, Dr. Trooskin has explained, HCV can lead to end-stage liver disease or even death for many patients if left untreated. [R. 182 at 2.] Other symptoms of the disease often include increased risk of diabetes, muscle and joint pain, headaches, fatigue, porphyria, cutanea tarda, and neurocognitive dysfunction. [*Id*. at 4.] This testimony given by Plaintiffs' expert clearly proves that chronic HCV is a serious medical condition, as many other courts agree including the Sixth Circuit. *See, e.g.*, *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 356 (6th Cir. 2006) ("[H]epatitis C likely constitutes a serious medical need sufficient to satisfy the objective component of our Eighth Amendment analysis[.]"); *Owens v. Hutchinson*, 70 F. App'x 159, 161 (6th Cir. 2003) ("Owens has adequately alleged that he suffered from an objectively serious medical condition – [HCV]."). Plaintiffs have also shown through factual data and expert testimony, that DAAs alleviate and cure HCV for the vast majority of HCV patients. [R. 182 at 7.]

Following the analysis previously outlined, the Court must next determine whether KDOC's HCV treatment policy is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Atkins*, 2019 LEXIS 168976, at *46–47. Plaintiffs argue that the American Association for the Study of Liver Disease and Infectious Disease Society of America (AASLD/IDSA) Guidelines set the standard of care for HCV treatment, including treatment for inmates. [R. 182 at 11.] Plaintiffs explain that KDOC's HCV treatment policies fall short of this standard of care by refusing to treat every inmate with

chronic HCV. [*Id*.] Plaintiffs also rely upon the Federal Bureau of Prisons (FBOP) plan on treating HCV patients, and explain five ways on how the KDOC plan differs including opt-out testing. [*Id*. at 10.]

Dr. Trooskin opines that she does not find the FBOP Guidelines to be an acceptable standard of care because the prioritization and delay in treatment cause damage and risks for a person throughout their entire life even if they are later cured. [R. 182, Exh. A, at 25.] However, like KDOC and FBOP policies, Dr. Trooskin explains that the AASLD/IDSA Guidelines update and change frequently as policies become outdated. [*Id*. at 38.] Likewise, it has been shown that KDOC updates its policies frequently, as there were revisions made to the HCV plan in 2017 and 2018 as new developments and guidance were discovered. [R. 168 at 10.] The KDOC plan currently mirrors the FBOP priority scale based upon patients' aspartate aminotransferase to platelet ratio index (APRI) scores to prioritize treatment among infected individuals. [*Id*.]

As *Atkins v. Parker* points out, "The AASLD/IDSA Guideline consists of treatment recommendations, not mandatory practice requirements." 2019 LEXIS 168976, at *48. The Court explains that the AASLD/IDSA Guideline can be relied upon, but that its recommendations are a source to gain "helpful understanding" of the "best possible practice, and provide 'evidence of a preferred public health policy,' but do 'not necessarily determine the standard for judging [constitutional] deliberate indifference.'" *Id*. (quoting *Buffkin v. Hooks*, 2019 LEXIS 45790, 2019 WL 1282785, at *6 (M.D.N.C. Mar. 20, 2019) ("noting that the AASLD/IDSA disclaims that its guidelines should not be relied on to suggest a course of treatment for a particular individual and cautioning against use of the AASLD/IDSA Guideline as a legal measure of Eighth Amendment deliberate indifference").

Further, even the AASLD/IDSA Guidelines recognize the barriers that still impact

ability to treat all patients infected with HCV, causing there to be a priority system. [R. 168 at 9.] For example, the AASLD/IDSA Guidelines identify individuals for whom immediate treatment would not be indicated in a correctional facility, such as individuals who would not be incarcerated long enough to complete the treatment. [*Id*. at 14.] Most importantly, the AASLLD/IDSA Guidelines quote that "in certain settings there remain factors that impact access to medications and the ability to deliver them to patients. In these settings, clinicians may still need to decide which patients should be treated first." [*Id*. at 9–10.]

As noted earlier, inmates are entitled to adequate care under the Eighth Amendment, but this does not mean they are entitled to the best standard of care or "the gold standard." *Atkins*, 2019 LEXIS 168976, at *50 (citing *Rhinehart*, 894 F.3d at 750). The KDOC HCV treatment plan consists of many different policies and protocols on how to administer DAA treatments to its inmates. All inmates have the choice and are recommended to be screened for HCV infection. [R. 168-29 at 7.] After such inmates test positive, they are evaluated on a regular basis depending on their APRI score to be considered for antiviral therapy. [*Id*. at 8.]

The past revisions to the KDOC HCV Guidance are improvements from the past protocols that closely mirror the FBOP Guidelines. Most notably, changes in the priority scale in the KDOC 2018 plan include a reduction of the patient's APRI score to trigger a referral to the patient for further evaluation and consideration of antiviral therapy. [*Id*. at 11.] The KDOC Guidelines establish a flexible prioritization system, that allows the medical providers to make exceptions based upon their individual medical judgments, thereby giving access to DAA treatment to patients outside the guidelines. [*Id*. at 11–12.] The changes to the 2018 KDOC HCV Guidance were incorporated to increase the number of HCV inmates treated with DAAs, as Defendants have shown more inmates are currently being treated or have been approved for

DAA treatment. [*Id*. at 13–14.] Therefore, Plaintiffs have not satisfied the objective component of the Eighth Amendment analysis.

**2**

Plaintiffs have also not established the subjective element of their Eighth Amendment claim. A prisoner must demonstrate that the defendants acted with the requisite intent, which includes that they had a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991). The plaintiff must show that such officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Dominguez v. Corr. Med. Servs.*, 55 F.3d 543, 550 (6th Cir. 2009); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be deemed liable under the Eighth Amendment "unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk." *Owen v. Hendrix*, 2019 LEXIS 179539, at *5 (W.D. Tn Oct. 17, 2019); *Id*. at 837. However, "a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (quoting *Farmer*, 511 U.S. at 835). As long recognized, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836.

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim. *Hill v. Haviland*, 68 F. App'x 603, 604 (6th Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). Furthermore, when "a prisoner has received some medical attention and the

13

dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound is state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). However, prison officials may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment. Deliberate indifference can be established in cases where it can be shown that a defendant rendered "grossly inadequate care" or made a "decision to take an easier but less efficacious course of treatment." *Terrance. v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)).

a

Plaintiffs have not presented any proof that Dr. Kemen nor any of the other medical providers acted with a culpable state of mind equivalent to criminal recklessness. Defendants have shown that Dr. Kemen and other providers have exercised their medical judgment to provide reasonable care for KDOC HCV inmates by updating KDOC policies and treatment protocols for HCV inmates and providing treatment where such resources are limited. [R. 168 at 9–10.] Changes in the treatment protocol used by KDOC and the decision of which specific patients should be treated first are all processes that involve reasoned medical judgment.

The KDOC medical staff carefully monitor and evaluate HCV patients on a consistent basis. [R. 168 at 12.] According to Dr. Kemen, "When a patient tests positive for the antibody, additional testing is conducted to determine whether the HCV virus is active. After identifying patients with an HCV infection, treatment with direct acting antiviral therapy is prioritized based upon the virus's progressions and the exercise of independent medical judgment." [*Id.*] However, Defendants claim that prisoners should receive HCV treatment of DAA drugs as soon

14

as possible to remove the HCV infection, no matter what the level infection. [R. 126 at 11.] As the Sixth Circuit has pointed out, "such ongoing and responsive medical treatment is the antithesis of deliberate indifference." *Villarreal v. Holland*, 3016 WL 673750, at *25 (E.D. Ky. Feb. 17, 2011) (citing *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994); *see also Lara-Portela v. Stine*, 2008 LEXIS 111, 2008 WL 45398, at *7–9 (E.D. Ky. Jan. 2, 2008)). Likewise, the Court in *Hix v. Tennessee Dep't of Corrections*, concluded that the inmate's claim that prison doctors mistreated his HCV and "made a deliberate decision to await Plaintiff's death by his liver shutting down" amounted to a claim of medical malpractice and did not state an Eighth Amendment claim. 196 F. App'x at 357.

Ultimately, the court must consider the wide discretion allowed to prison officials in their treatment of prisoners under authorized medical procedures. *See Westlake*, 537 F.2d at 860. "[W]hether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. A decision to not administer a certain form of medical treatment does not represent cruel and unusual punishment. *Id*. Because the record reflects and Plaintiffs have not presented any evidence in opposition, Dr. Kemen, along with the other medical providers have consciously exercised KDOC's HCV treatment policies and protocols and the Court cannot conclude that the KDOC medical providers have acted or will act with a culpable state of mind regarding the inmates' HCV treatment. Therefore, Plaintiffs have not met their burden of establishing the subjective element of their Eighth Amendment deliberate indifference claim against Defendants.

## C

Defendants have set out legally compelling and sound arguments for summary judgment on the claims arising under the Rehabilitation and Americans with Disabilities Act. [R. 168.]

However, Plaintiffs have failed to respond to these arguments in their Response to Summary Judgment. [*See* R. 182.] Under the Local Rules for the Eastern District of Kentucky, "[f]ailure to timely respond to a motion may be grounds for granting the motion." LR 7.1(c); *see also Humphrey v. U.S. Attorney General's Office*, 279 Fed. App'x 328, 331 (6th Cir. 2008) (recognizing that in certain instances a party's lack of response to a motion or argument may be grounds for the district court to assume that the non-moving party waives opposition and grant the motion). However, in cases involving motions for summary judgment, a lack of response to the motion does not lessen the burden of the moving party to demonstrate the absence of a genuine issue of material fact, nor does the lack of response lessen the burden of the Court "to examine the movant's motion … to ensure that he has discharged that burden." *Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991).

Under the Americans with Disabilities Act, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Medical care in prisons constitutes such "services, programs, or activities" contemplated. *United States v. Georgia*, 546 U.S. 151, 157 (2006). Section 504 of the Rehabilitation Act similarly protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

The proper defendant in a claim arising under the American with Disabilities Act is a public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Therefore, Defendants sued in their individual capacities do not

meet the criteria to qualify as proper defendants under the American with Disabilities Act claim. Nevertheless, Plaintiffs' American with Disabilities Act and Rehabilitation Act claims still fail as to all Defendants because Plaintiffs have not sufficiently alleged that they are being discriminated against because of their disability. The policies and protocol apply to all HCV positive inmates and therefore "all similarly situated inmates are treated equally and obtain the benefits of the program in the same way." [R. 168 at 43.] In addition, Plaintiffs are not being excluded or denied treatment, as they are put on a waiting list to receive treatment, while they are monitored for viral progression. [*Id.*]

"The failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an American with Disabilities Act violation." *Stevens v. Hutchinson*, 2013 WL 4926813, at *13 (W.D. Mich. Sept. 12, 2013); *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (concluding that the American with Disabilities Act "would not be violated by a prison simply failing to attend to the medical needs of its disabled prisoners" and that the statute "does not create a remedy for medical malpractice"); *McNally v. Prison Health Servs*., 46 F.Supp.2d 49, 58 (D. Me. 1999) (distinguishing between "claims that the medical treatment received for a disability was inadequate from claims that a prisoner has been denied access to services or programs because he is disabled," and concluding that only the latter class of claims states an American with Disabilities Act violation). Thus, Defendants have adequately shown that no genuine issue of fact exists in regard to Plaintiffs' claims arising under the American with Disabilities Act and Rehabilitation Act.

# D

Federal courts are courts of limited jurisdiction. In order to hear a suit, the Court must have subject-matter jurisdiction over it. *See, e.g., Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990) (explaining a "federal court lacks authority to hear a case without subject matter jurisdiction"). The Plaintiffs' American with Disabilities Act, Rehabilitation Act, and § 1983 claims were removable to this Court because the claims arose under federal law. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The remainder of Plaintiffs' claims are based on Kentucky's Negligence and Intentional Infliction of Emotional Stress standards. They are not federal questions, but were removed to this Court on the basis of supplemental jurisdiction. *See* 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Without the American with Disabilities Act, Rehabilitation Act, and § 1983 claims, however, there is no longer a basis for supplemental jurisdiction over the state law violations.

Having already dismissed the claims arising under federal law, any remaining state law claims are best reserved for the state courts. *See, e.g., Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (holding that "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state law claims"). Accordingly, the Plaintiffs' claims related to Negligence and Intentional Infliction of Emotional Distress arising under Kentucky law in Counts Three and Four of the complaint are properly remanded.

**E**

Plaintiffs also are not entitled to punitive damages against any Defendant. Punitive damages are only available in an action brought under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of the plaintiff." *Brown v. Brown*, 46 Fed. App'x. 324, 325 (6th Cir. 2002) (citing *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)). As explained above, the Court has found that the evidence presented does not support a finding that any Defendant acted with deliberate indifference to Plaintiffs' constitutional rights, and there has certainly been no evidence presented of an evil motive or of callous indifference to their rights. Thus, no reasonable jury could award punitive damages to Plaintiffs on their federal claims.

**III**

Therefore, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' Motion for Summary Judgment [R. 168] is **GRANTED** as to Counts One and Two of the Plaintiffs' Complaint;

2. Counts Three through Four of the Plaintiffs' Complaint regarding state law violations are **REMANDED** for further consideration by the state court;

3. The pending motions [R. 179; R. 180; R. 183; R. 188] are **DENIED AS MOOT**;

4. Plaintiffs' Motion for leave to Seal a Document [R. 184] is **GRANTED**; and

5. This case is **STRICKEN** from the Court's active docket.

This the 4th day of February, 2020.



Gregory F. Van Tatenhove
United States District Judge